[Cite as *State v. Schall*, 2015-Ohio-2962.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
VINTON COUNTY

STATE OF OHIO,                                  :

    Plaintiff-Appellee,                    :
                                  Case No. 14CA695

v.                                              :

                                  DECISION AND
ROBERT W. SCHALL,                               :   JUDGMENT ENTRY

    Defendant-Appellant.                   :   RELEASED 07/20/2015

APPEARANCES:[1]

Timothy P. Gleeson, Gleeson Law Office, Logan, Ohio, for Appellant.

Hoover, P.J.

{¶ 1} Defendant-appellant, Robert W. Schall, appeals his convictions and sentence in the Vinton County Common Pleas Court after a jury found him guilty of four counts of aggravated murder each with a firearm specification, one count of aggravated burglary with a firearm specification, one count of aggravated arson, and one count of aggravated robbery with a firearm specification. Schall's appellate counsel has advised us that he has reviewed the record and can discern no meritorious claims on appeal. Appellate counsel has thus moved to withdraw under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). After independently reviewing the record, we agree that no meritorious claims exist for appeal. Accordingly, we find this appeal to be wholly frivolous, grant the request to withdraw, and affirm the judgment of the trial court.

I. Facts and Procedural Background

---

[1] The State of Ohio has not entered an appearance or otherwise participated in this appeal. Appellant also has not entered a personal appearance in this appeal.

{¶ 2} On the evening of October 7, 2011, the Laurelville Fire Department was dispatched to the scene of a structure fire in Eagle Township, Vinton County, Ohio. When first responders arrived, a mobile home was fully engulfed in flames, with fire coming out of both ends of the home. Assistant Fire Chief Robert Miller was informed that a body might be present inside the mobile home and requested the presence of law enforcement. With the help of a couple of firemen, Miller searched the mobile home and found a badly burned and charred body.

{¶ 3} When officials removed the body from the mobile home, they observed obvious trauma to the head. The deceased was eventually identified as Michael Hunt; and an autopsy revealed that Hunt had been shot once in the head. An investigation led by the Ohio State Fire Marshal's Office and the Vinton County Sheriff's Office immediately ensued. Using cell phone records, investigators identified Schall and his longtime girlfriend Celena Danner as suspects. After law enforcement was unable to verify an alibi, arrest warrants were issued for Schall and Danner. Following his arrest, Schall confessed that he and Danner travelled to Hunt's mobile home armed with a .22 caliber rifle. Schall confronted Hunt about a $160 debt that Hunt allegedly owed him. Schall stated that when Hunt reached for a shotgun, he shot Hunt five times in the head. Schall stated that after he shot Hunt, he took money and pills from Hunt's pockets, took the shotgun, and set a couch on fire. Schall directed law enforcement to the location of the rifle.

{¶ 4} The Vinton County Grand Jury indicted Schall on November 16, 2011. The indictment charged Schall with the following seven offenses: Count One, aggravated murder in violation of R.C. 2903.01(A), with three separate aggravating circumstance specifications and one firearm specification; Count Two, aggravated murder in violation of R.C. 2903.01(B), with three separate aggravating circumstance specifications and one firearm specification; Count

Three, aggravated murder in violation of R.C. 2903.01(B), with three separate aggravating circumstance specifications and one firearm specification; Count Four, aggravated murder in violation of R.C. 2903.01(B), with three aggravating circumstance specifications and one firearm specification; Count Five, aggravated burglary, a first-degree felony in violation of R.C. 2911.11(A)(1) with a firearm specification; Count Six, aggravated arson, a first-degree felony in violation of R.C. 2909.02(A)(1); and Count Seven, aggravated robbery, a first-degree felony in violation of R.C. 2911.01(A)(1) with a firearm specification.

{¶ 5} Ultimately, the State voluntarily sought, and the trial court issued, an order dismissing all of the aggravated circumstance specifications for each of the aggravated murder charges. Meanwhile, defense counsel's motion to suppress Schall's confession was overruled by the trial court following an evidentiary hearing on the matter.

{¶ 6} A jury trial was conducted on April 16 and 17, 2013. Both the State and the defense presented evidence and arguments. The trial court instructed the jury; and the jury deliberated. After approximately two and a half hours of deliberation, the trial court received a written note from the jury indicating they were deadlocked. Upon motion of the defense, the trial court terminated the proceedings and declared a mistrial.

{¶ 7} A second trial was conducted on September 4 and 5, 2013. On the first day of this second trial, a jury was selected; the parties presented their opening statements; and the State began presenting its evidence. At the conclusion of the first day of trial, a juror went to the Vinton County Sheriff's Office seeking a ride home. A sheriff's deputy who had testified as a witness earlier in the day drove the juror home. The next morning, the State disclosed to the trial court the sheriff deputy's contact with the juror. Defense counsel requested a mistrial. After

interviewing the sheriff's deputy and the juror, the trial court terminated the proceedings and declared a mistrial.

{¶ 8} A third jury trial was conducted on December 11 and 12, 2013. At this trial, the State presented evidence including the testimony of Miller describing the initial scene; his discovery of the body; his request for law enforcement; and his attempt to preserve evidence while firefighters worked to extinguish the fire.

{¶ 9} Denzel Williams, Jr., also testified during the State's case-in-chief.  Williams was a neighbor of Schall and Danner from Highland County, Ohio. On the evening of October 7, 2011, Williams agreed to watch Schall and Danner's minor child so the pair could travel to Hunt's residence in Vinton County to collect a debt. Williams indicated that the couple did not return until 9:00 a.m. the next morning to retrieve their daughter. After picking-up his daughter, Schall returned hours later and informed Williams that after he and Danner had left Hunt's residence somebody had robbed and killed Hunt. Williams also testified that he had allowed Schall to store three guns in the attic of his home. Schall, an ex-felon, was apparently worried that if law enforcement came to question him about the events of October 7, he would be arrested for possessing the guns. Schall also asked Williams to tell law enforcement that he was home by 10:30 p.m. or 11:00 p.m. on the night of October 7, 2011. Williams, however, told law enforcement that Schall and Danner were not home by 10:30 p.m. or 11:00 p.m. to pick-up their daughter.

{¶ 10} Roman Brandau, a fire and explosion investigator for the Ohio State Fire Marshal's Office also testified. Brandau arrived at the scene in the early morning hours of October 8, 2011. From the burn patterns he observed during his examination of the fire, Brandau was able to conclude that the fire originated in the immediate area of the victim's body, most

likely on the couch. Brandau also testified that the victim's cell phone records led to the identification of Schall and Danner as suspects, noting the high volume of calls made by Schall and Danner to Hunt on October 7. The State, through Brandau, also introduced and played for the jury the audio/video recording of Schall's confession. Finally, Brandau concluded that the fire started as a result of an act of arson. It was Brandau's opinion that Schall had shot Hunt and then intentionally started the fire, just as Schall had confessed.

{¶ 11} In addition to the above testimony, the trial court admitted into evidence numerous photographs of the mobile home and the burned body of the victim. The trial court also admitted into evidence a diagram of the mobile home; the audio/video recording of Schall's confession; the .22 rifle recovered during the investigation; .22 caliber shells recovered in a search of Schall's home; money and shot gun shells recovered from Schall's home; a projectile recovered from the autopsy of the victim; the cell phone record subpoena; one page of the cell phone records; and the autopsy report.[2]

{¶ 12} The defense also presented evidence at the jury trial. First, Danner was called as a witness by the defense upon cross-examination. Danner testified that she had resided with Schall since 2002, and that a daughter was born to them in 2007. She also testified that on the day of the incident she and Schall travelled to Hunt's residence to collect money owed to them. She indicated that upon arrival everything seemed normal. The couple obtained a Percocet pill from Hunt and consumed the pill inside the mobile home. Then, they started talking about the debt; and an argument ensued. During the argument, Danner asked Schall to get her a drink from the car. When Schall returned, he had a long-gun down his side. According to Danner, Hunt then reached for a shotgun; and Schall shot him. Danner recalls hearing three shots and then running

---

[2] Following the State's case-in-chief, the defense moved for an acquittal on all counts. The trial court denied the motion for acquittal.

out of the mobile home. Danner testified that she then waited in the vehicle until Schall returned from inside the mobile home. Schall eventually returned with the .22 rifle and the victim's shotgun. Danner acknowledged that she had obtained a plea deal from the State in exchange for her testimony against Schall.

{¶ 13} Schall also testified in his own defense. He testified that he and Danner had loaned Hunt $160. He and Danner had gone to Hunt's residence on October 7, 2011, because Danner wanted to retrieve payment on the loan. Schall indicated that he did not take his .22 caliber rifle with him. Upon arriving at Hunt's residence, Schall testified that he stayed in the vehicle and Danner entered the mobile home. According to Schall, Danner emerged from the mobile home five minutes later with eight pills. On the following day, Schall heard about the fire from a friend; and he asked Danner what had occurred inside the mobile home. According to Schall, Danner admitted to shooting Hunt in the face with a .22 revolver because she was tired of Hunt grabbing her. Schall testified that he gave officers a false confession to protect Danner so she could care for their daughter. Schall denied killing Hunt and took no responsibility for the fire.

{¶ 14} Following the third trial, the jury returned guilty verdicts on all seven counts of the indictment and the firearm specifications as to Counts One, Two, Three, Four, Five, and Seven. The trial court conducted a sentencing hearing on January 9, 2014. By stipulation of the parties, the trial court determined that all seven offenses were allied offenses of similar import and would merge for purposes of sentencing. Thus, the State elected to proceed to sentencing under Count Two, aggravated murder, with aggravated arson as the underlying offense, and the firearm specification thereto. The trial court ultimately imposed a sentence of life in prison, with parole eligibility after thirty years, together with a consecutive term of three years mandatory

prison for the firearm specification. The trial court also ordered that Schall pay court costs. Schall timely filed a notice of appeal from the entries journalizing the convictions and sentence.

II. <em>Anders</em>

{¶ 15} Although Schall has appealed his convictions and sentence, his appellate counsel has filed both a motion to withdraw and an *Anders* brief.

> In *Anders*, the United States Supreme Court held that if counsel determines after a conscientious examination of the record that the case is wholly frivolous, counsel should so advise the court and request permission to withdraw. Counsel must accompany the request with a brief identifying anything in the record that could arguably support the appeal. [*Anders*, 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493]. The client should be furnished with a copy of the brief and given time to raise any matters the client chooses. *Id*. Once these requirements are met, we must fully examine the proceedings below to determine if an arguably meritorious issue exists. *Id*. If so, we must appoint new counsel and decide the merits of the appeal. *Id*. If we find the appeal frivolous, we may grant the request to withdraw and dismiss the appeal without violating federal constitutional requirements or may proceed to a decision on the merits if state law so requires. *Id*.

*State v. Lester*, 4th Dist. Vinton No. 12CA689, 2013-Ohio-2485, ¶ 3.

{¶ 16} Here, Schall's counsel has satisfied the requirements of *Anders*. While Schall has not filed a pro se brief, his appellate counsel has identified the following potential assignments of error:

First Potential Assignment of Error:

> THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT CONVICTIONS FOR AGGRAVATED MURDER AND THE CONVICTIONS FOR

AGGRAVATED MURDER WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

Second Potential Assignment of Error:

THE SECOND RETRIAL (THIRD TRIAL) VIOLATED THE CONSTITUTIONAL BAR TO DOUBLE JEOPARDY.

Third Potential Assignment of Error:

THE TRIAL COURT'S SENTENCE WAS UNREASONABLE AND AN ABUSE OF DISCRETION.

Fourth Potential Assignment of Error:

SCHALL WAS DENIED HIS RIGHT TO DUE PROCESS WHEN HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO MOVE THE TRIAL COURT TO WAIVE THE IMPOSITION OF COURT COSTS.

### III. Law and Analysis

{¶ 17} As required, we will examine appellate counsel's potential assignments of error and the entire record to determine if an arguably meritorious issue exists or if this appeal is wholly frivolous.

A. *Sufficiency of the Evidence and Manifest Weight of the Evidence*

{¶ 18} In the first potential assignment of error, appellate counsel asserts that Schall's convictions for aggravated murder were not supported by sufficient evidence, or alternatively, were against the manifest weight of the evidence.

{¶ 19} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt." *State v. Davis,* 4th Dist.

Ross No. 12CA3336, 2013–Ohio–1504, ¶ 12. "The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *Id.,* citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Therefore, when we review a sufficiency of the evidence claim in a criminal case, we review the evidence in a light most favorable to the prosecution. *State v. Hill,* 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant,* 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion the trier of fact did. *State v. Tibbetts,* 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh,* 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶ 20} " 'Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence.' " *State v. Topping,* 4th Dist. Lawrence No. 11CA6, 2012–Ohio–5617, ¶ 60, quoting *Thompkins* at 387. "When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses." *Id*. "The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve." *Id*., citing *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001), and *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. This is so because "[t]he trier of fact 'is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the

proffered testimony.' " *State v. Pippen,* 4th Dist. Scioto No. 11CA3412, 2012–Ohio–4692, ¶ 31, quoting *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 21} "Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Quotations omitted.) *Davis* at ¶ 14.

{¶ 22} If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, 867 N.E.2d 493, ¶ 16 (4th Dist.). A reviewing court should find a conviction against the manifest weight of the evidence " 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *see also State v. Lindsey,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶ 23} In Count One of the indictment, Schall was convicted of aggravated murder under R.C. 2903.01(A). R.C. 2903.01(A) provides as follows: "No person shall purposely, and with prior calculation and design, cause the death of another * * *." In Counts Two through Four, Schall was convicted of aggravated murder under R.C. 2903.01(B), which states:

> No person shall purposely cause the death of another * * * while committing or
>
> attempting to commit, or while fleeing immediately after committing or
>
> attempting to commit, kidnapping, rape, aggravated arson, arson, aggravated

robbery, robbery, aggravated burglary, burglary, trespass in a habitation when a

person is present or likely to be present, terrorism, or escape.

R.C. 2903.01(B) is often referred to as the felony-murder provision of the aggravated murder

statute. *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 29. Count Two

lists aggravated arson as the underlying felony offense. Counts Three and Four list aggravated

burglary and aggravated robbery, respectively, as the underlying predicate offenses supporting

the felony-murder charges.[3]

{¶ 24} First, appellate counsel asserts that Schall's conviction under R.C. 2903.01(A)

(Count One) is against the manifest weight of the evidence and is not supported by sufficient

evidence because the State failed to prove that he acted with prior calculation and design.

Specifically, appellate counsel contends that Schall's recorded confession and Danner's

testimony demonstrate that Schall shot Hunt only after Hunt had reached for a shotgun.

{¶ 25} No "bright-line test" exists to "emphatically distinguish[] between the presence or

absence of 'prior calculation and design.' Instead, each case turns on the particular facts and

evidence presented at trial." *State v. Taylor*, 78 Ohio St.3d 15, 20, 676 N.E.2d 82 (1997); *see

also State v. Coley*, 93 Ohio St.3d 253, 263, 754 N.E.2d 1129 (2001). " '[P]rior calculation and

design' requires 'a scheme designed to implement the calculated decision to kill.' " *State v.

D'Ambrosio*, 67 Ohio St.3d 185, 196, 616 N.E.2d 909 (1993), quoting *State v. Cotton,* 56 Ohio

St.2d 8, 11, 381 N.E.2d 190 (1978). Additionally, three factors may help in determining whether

prior calculation and design exists: (1) whether the accused and victim knew each other, and, if

so, whether that relationship was strained; (2) whether the accused gave thought or preparation to

choosing the murder weapon or the murder site; or (3) whether the act was drawn out or whether

---

[3] We note that the indictment included separate counts for the underlying felonies—Counts Five through Seven - and these counts set forth the elements for these offenses.

it was an almost instantaneous eruption of events. These circumstances may coincide to support the conclusion that the crimes were committed with prior calculation and design. *State v. Braden,* 98 Ohio St.3d 354, 2003–Ohio–1325, 785 N.E.2d 439, ¶ 62.

{¶ 26} Here, the jury did not create a manifest miscarriage of justice by convicting Schall of aggravated murder under R.C. 2903.01(A). The state presented substantial evidence upon which the jury reasonably could conclude that Schall committed the offense with prior calculation and design. First, the victim and Schall knew each other and at the time of the incident had a strained relationship. Before the victim's death, Schall admitted that the victim owed him money and that the debt had angered him. Schall told a neighbor that he planned on confronting the victim and getting his money back. Schall and Danner both testified that the victim owed them money and the purpose of travelling to the mobile home on the night of the incident was to collect on the debt. Second, according to Danner's testimony and Schall's recorded confession, Schall placed the gun used to kill the victim in the back seat of Danner's vehicle before leaving their shared residence. This fact demonstrates that he gave thought to choosing the murder weapon. Also, the fact that Schall traveled to the victim's home in Vinton County to confront the victim shows that Schall gave thought to the murder site. Vinton County is a significant distance from Schall's home in Hillsboro; and Schall may have thought that authorities would not link the crime to suspects that lived so far away. Schall was also familiar with the layout of the victim's home, having been there on prior occasions. Third, according to Danner, after arguing with the victim for some time, Schall briefly left the mobile home to retrieve the gun, and then re-entered the home and shot the victim. This shows that he had sufficient time to consider his actions. While Schall's recorded confession depicts a slightly

different version of the events, it also demonstrates that Schall and the victim had argued about the debt for some time before the victim's ultimate demise.

{¶ 27} Additionally, the following facts help establish that Schall committed the murder with prior calculation and design. The victim's death was brutal and instantaneous. The evidence shows that the victim died of at least one gunshot wound to the head. Schall even stated in his recorded confession that he got the victim in the "good eye". *See State v. Campbell*, 90 Ohio St.3d 320, 330, 738 N.E.2d 1178 (2000) (firing shots into a victim's head at close range showed prior calculation and design). Plus, following the murder Schall immediately reached into the victim's pockets and took pills and money. Moreover, the mobile home was set on fire after the murder, suggesting that the perpetrator intended to destroy evidence of the murder and other crimes. All of the foregoing facts help show that Schall committed the murder with prior calculation and design.

{¶ 28} To the extent that Schall's trial testimony differed from his recorded confession, and from Danner's testimony, we note that the weight to be afforded evidence and the credibility of testimony are issues to be determined by the trier of fact. *State v. Frazier*, 73 Ohio St.3d 323, 339, 652 N.E.2d 1000 (1995), citing *Grant*, 67 Ohio St.3d at 477, 620 N.E.2d 50. As stated above, the fact finder "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co.*, 10 Ohio St.3d at 80, 461 N.E.2d 1273. Here, both defense counsel and the State fully examined Schall and Danner concerning their past criminal history, their history of drug use, their relationship with the victim, their version of events, Danner's plea agreement, and any other biases or motives they may have had in testifying at trial. Thus, the jury had before it sufficient facts to ascertain Schall and Danner's credibility and to weigh it

accordingly. Having reviewed the testimony and the other evidence adduced at trial, we do not believe that there was insufficient evidence to prove prior calculation and design, or that the jury clearly lost its way in convicting Schall of aggravated murder under R.C. 2903.01(A).

{¶ 29} Next, appellate counsel contends that the evidence was insufficient to sustain Schall's convictions for aggravated (felony) murder (Counts Two through Four) because Schall did not commit the underlying felonies until *after* the purposeful killing of the victim. In support of this argument, appellate counsel argues that the term "while," as that term appears in R.C. 2903.01(B), requires proof that the purposeful killing of another occur during the commission of the underlying felony offense or while fleeing immediately after committing the underlying felony.

{¶ 30} The Ohio Supreme Court, however, "has rejected any notion that R.C. 2903.01(B) * * * require[s] proof that the offender formed the intent to commit the pertinent underlying felony before or during the commission of the acts which resulted in the murder victim's death." *State v. Palmer*, 80 Ohio St.3d 543, 570, 687 N.E.2d 685 (1997), citing *State v. Williams*, 74 Ohio St.3d 569, 576–578, 660 N.E.2d 724 (1996), and *State v. Biros*, 78 Ohio St.3d 426, 449–451, 678 N.E.2d 891 (1997). Moreover, "the term 'while' does not indicate * * * that the killing must occur at the same instant as the [underlying felony], or that the killing must have been caused by the [felony]." *State v. Cooper*, 52 Ohio St.2d 163, 179–180, 370 N.E.2d 725 (1977). "Nor does it mean that the felony must have been the motive for the killing." *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 55, citing *Williams* at 577, and *State v. McNeill* (1998), 83 Ohio St.3d 438, 441, 700 N.E.2d 596 (1998).

{¶ 31} Rather, the Ohio Supreme Court has consistently held that "while" means that " 'the killing must be directly associated with the [felony] as part of one continuous occurrence * *

*.' " *Johnson* at ¶ 56, quoting *Cooper* at 179–180; *see also State v. Cooey*, 46 Ohio St.3d 20, 23,

544 N.E.2d 895 (1989). " '[T]he term "while" means that the death must occur as part of acts

leading up to, or occurring during, or immediately subsequent to the [relevant felony].' " *Id.*,

quoting *Williams* at 577. " 'The sequence of events' may be 'examined in light of time, place,

and causal connection' to determine whether it 'amounts to "one continuous occurrence." ' " *Id.*,

quoting *McNeill* at 441.

{¶ 32} Here, the evidence indicates that money, pills, and a shotgun were taken from

Hunt immediately after he was shot. Additionally, Hunt's mobile home was set ablaze just after

Hunt was shot. Schall, himself, admitted during his recorded confession that he personally took

the money, pills, and shotgun from Hunt, although he later changed his story at trial. Schall also

initially confessed to starting the fire immediately after he shot Hunt. Thus, we do not believe

that there was insufficient evidence to prove the essential elements of aggravated murder under

R.C. 2903.01(B).

{¶ 33} Viewing the evidence in the light most favorable to the prosecution, it is clear that

any rational trier of fact could have found that the killing was "associated with" the underlying

felonies "as part of one continuous occurrence." Likewise, the trier of fact could have found that

the aggravated murder "occur[red] as part of acts leading up to" the underlying felonies.

{¶ 34} Finally, appellate counsel argues that Schall did not trespass on the victim's

property. And if Schall did not trespass, he could not have committed aggravated burglary. And

if Schall could not have committed aggravated burglary, he could not have committed

aggravated murder. *See* R.C. 2903.01(B) (including aggravated burglary as a predicate offense

for aggravated murder). Therefore, according to appellate counsel, the State did not prove the

counts involving either (1) aggravated burglary or (2) aggravated murder—that is, Counts Three and Five.

{¶ 35} R.C. 2911.11(A) is the aggravated burglary statute, and it states that:

No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply: * * *.

{¶ 36} Under R.C. 2911.21(A)(1)'s definition of "criminal trespass," "[n]o person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another[.]"

{¶ 37} Here, we find that appellate counsel's argument has no merit. Even if Schall had permission to enter Hunt's mobile home, "the privilege of an invited guest to be on the premises is terminated if [that guest] commits a violent act." *State v. Young,* 4th Dist. Scioto No. 07CA3195, 2008–Ohio–4752, ¶ 25, citing *State v. Steffen,* 31 Ohio St.3d 111, 115, 509 N.E.2d 383 (1987); *see also State v. Evans*, 4th Dist. Jackson No. 10CA1, 2012-Ohio-1562, ¶ 63. Therefore, once Schall attacked Hunt, he became a trespasser and he no longer had the privilege to be in Hunt's home. Accordingly, because the jury could have reasonably found that Schall trespassed upon Hunt's property, we reject appellate counsel's trespass-related arguments.

{¶ 38} Based on the foregoing, we find no merit in the first potential assignment of error identified by Schall's appellate counsel.

*B. Double Jeopardy*

{¶ 39} In the second potential assignment of error, appellate counsel contends that the second retrial, i.e., the third and final trial, was barred by the double jeopardy clause contained in the Fifth Amendment to the United States Constitution.

{¶ 40} In *Oregon v. Kennedy*, 456 U.S. 667, 679, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), the United States Supreme Court stated the following:

> [T]he circumstances under which [a criminal defendant who moved for a mistrial] may invoke the bar of double jeopardy * * * are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

The Ohio Supreme has adopted the *Kennedy* rule, noting that:

> The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, protects a criminal defendant from repeated prosecutions for the same offense. *Oregon v. Kennedy* (1982), 456 U.S. 667, 671, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416, 422. When a trial court grants a criminal defendant's request for a mistrial, the Double Jeopardy Clause does not bar a retrial. *Id.* at 673, 102 S.Ct. at 2088, 72 L.Ed.2d at 423. A narrow exception lies where the request for a mistrial is precipitated by prosecutorial misconduct that was intentionally calculated to cause or invite a mistrial. *Id.* at 678–679, 102 S.Ct. at 2091, 72 L.Ed.2d at 427. See, also, *State v. Doherty* (1984), 20 Ohio App.3d 275, 20 OBR 338, 485 N.E.2d 783. Only where the prosecutorial conduct in question is intended to "goad" the defendant into moving for a mistrial may defendant raise the bar of double jeopardy to a second trial after having succeeded

in aborting the first on his own motion. *Oregon v. Kennedy, supra,* 456 U.S. at

676, 102 S.Ct. at 2089, 72 L.Ed.2d at 425.

*State v. Loza*, 71 Ohio St.3d 61, 70, 641 N.E.2d 1082 (1994), *overruled on other grounds*.

{¶ 41} Here, the trial court declared a mistrial ending the second trial, upon Schall's

motion, after Schall had learned that a juror had a conversation with a sheriff's deputy, who had

testified as a witness. The conversation between the juror and the sheriff's deputy may have

involved some limited conversation about the trial. [Sept. 4 and 5, 2013 Trial Tr. at 160-161.]

{¶ 42} After reviewing the record, we conclude that the prosecutor's conduct was not

intended to provoke Schall into moving for a mistrial. The prosecution revealed the conversation

to the trial court and defendant the morning of the second day of trial at its earliest opportunity to

do so and in the middle of its presentation of evidence. There was no apparent advantage to the

State to obtain a mistrial at that time. There is no indication that the State engaged in an

intentional act of deception, or that the State directed the sheriff's deputy to initiate contact with

the juror. Rather, it was the juror who had sought the deputy for a ride home following the first

day of trial. While the sheriff's deputy should have avoided being the person to give the juror a

ride home, the act, nonetheless, does not appear to be prosecutorial misconduct designed to

provoke Shall into seeking a mistrial. In fact, in reviewing the record, it appears that the

prosecution was just as surprised as the defense in learning of the conversation from the sheriff's

office.

{¶ 43} Because the prosecutor's conduct was not calculated to manipulate Schall into

seeking a mistrial, Schall's retrial was not barred by the prohibition against double jeopardy.

Accordingly, appellate counsel's second potential assignment of error is without merit.

*C. Appellate Review of Aggravated Murder Sentence*

{¶ 44} In the third potential assignment of error, appellate counsel contends that the trial court's sentence was unreasonable and an abuse of discretion.

{¶ 45} In the case sub judice, the trial court determined that all seven offenses were allied offenses of similar import subject to merger, and the State elected to proceed to sentencing under Count Two, aggravated felony murder, with aggravated arson as the predicate offense. Recently, this Court held that "pursuant to R.C. 2953.08(D)(3)[4], we lack statutory authority to review [aggravated murder and murder] sentence[s] on an evidentiary basis." *State v. Hawkins*, 4th Dist. Gallia No. 13CA3, 2014-Ohio-1224, ¶ 15. Thus, relying on the rationale more fully set forth in *Hawkins*, we conclude that the trial court's sentence is not subject to appellate review and appellate counsel's third potential assignment of error lacks merit.

*D. Ineffective Assistance of Counsel*

{¶ 46} In the fourth potential assignment of error, appellate counsel contends that Schall received ineffective assistance from counsel because his trial attorney failed to move for waiver of court costs.

{¶ 47} Criminal defendants have a right to counsel, including a right to the effective assistance from counsel. *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), fn. 14; *State v. Stout,* 4th Dist. Gallia No. 07CA5, 2008–Ohio–1366, ¶ 21. To establish constitutionally ineffective assistance of counsel, a criminal defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff,* 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient

---

[4] R.C. 2953.08(D)(3) provides that "[a] sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2929.06 of the Revised Code is not subject to review under this section."

performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway,* 109 Ohio St.3d 412, 2006–Ohio–2815, 848 N.E.2d 810, ¶ 95. "Failure to establish either element is fatal to the claim." *State v. Jones,* 4th Dist. Scioto No. 06CA3116, 2008–Ohio–968, ¶ 14.

{¶ 48} "When considering whether trial counsel's representation amounts to deficient performance, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. Walters,* 4th Dist. Washington Nos. 13CA33, 13CA36, 2014–Ohio–4966, ¶ 23, quoting *Strickland* at 689. "Thus, 'the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' " *Id.*, quoting *Strickland* at 689. " 'A properly licensed attorney is presumed to execute his duties in an ethical and competent manner.' " *Id.*, quoting *State v. Taylor,* 4th Dist. Washington No. 07CA1, 2008–Ohio–482, ¶ 10. "Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment." *Id.*

{¶ 49} R.C. 2947.23(A)(1)(a) mandates that "[i]n all criminal cases * * * the judge or magistrate shall include in the sentence the costs of prosecution * * * and render a judgment against the defendant for such costs." "Despite the fact that R.C. 2947.23(A) requires a judge to assess court costs against all criminal defendants, the Supreme Court of Ohio has held that 'waiver of costs is permitted—but not required—if the defendant is indigent.' " *State v. Stone,* 4th Dist. Scioto No. 11CA3462, 2013–Ohio–209, ¶ 28, quoting *State v. Joseph,* 125 Ohio St.3d 76, 2010–Ohio–954, 926 N.E.2d 278, ¶ 11.

{¶ 50} When considering a claim that trial counsel was ineffective based on a failure of counsel to seek waiver of court costs, the test applied by Ohio courts is whether a reasonable probability exists that the trial court would have found appellant indigent had such waiver been sought. *State v. Doss,* 4th Dist. Gallia No. 09CA20, 2012–Ohio–883, ¶ 19. "A determination that appellant was indigent requires that the court consider both present and future ability to pay the* * * costs." *Id.* at ¶ 21.

{¶ 51} Here, Schall's future ability to pay the costs is bleak, as he will be incarcerated for at least thirty-three years and potentially for the remainder of his life. Upon reviewing the record, however, we are not persuaded that Schall lacks the present ability to pay the court costs. It was adduced at trial, inter alia, that Schall had worked as a certified welder; that he had profited from the sale of real estate just prior to the murder; and that he had profited from the sale of the shotgun stolen from the victim. It was also learned that Schall, on occasion, worked with Williams, his neighbor, and earned income doing "some other side things". [Dec. 11 and 12, 2013 Trial Tr. at 26.] Therefore, we cannot conclude that a reasonable probability exists that Schall would have been found indigent had his counsel raised the issue. Consequently, we cannot find that trial counsel's performance was constitutionally ineffective for failing to raise the issue. Appellate counsel's fourth potential assignment of error is without merit.

## IV. Conclusion

{¶ 52} In conclusion, we find no merit in the potential assignments of error identified by Schall's appellate counsel. Furthermore, after independently reviewing the proceedings below, we have found no other potential issues for appeal. We find no arguably meritorious issues exist for appeal. We find that Schall's appeal is wholly frivolous; therefore, we grant appellate counsel's motion to withdraw and affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Vinton County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.: Concurs in Judgment and Opinion.
McFarland, A.J.: Concurs in Judgment Only.

For the Court

By:_____
Marie Hoover, Presiding Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.