[Cite as *State v. Kirby*, 2020-Ohio-4005.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-05-078 |
| | : | O P I N I O N |
| - vs - | | 8/10/2020 |
| | : | |
| BRYAN KIRBY, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2018-07-1131


Michael T. Gmoser, Butler County Prosecuting Attorney, Stephen M. Wagner, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Rodriguez & Porter, Ltd., Paul W. Shonk, 5103 Pleasant Avenue, Fairfield, Ohio 45014, for appellant


**PIPER, J.**

{¶1} Appellant, Bryan Kirby, appeals from his convictions in the Butler County Court of Common Pleas for aggravated burglary, arson, and two counts of aggravated arson. For the reasons discussed below, we affirm his convictions.

{¶2} One morning in early September 2017, in Middletown, Ohio, appellant's

estranged wife awoke to knocking on her house's front door.[1] When she answered the door, she saw a man running away but warning that her house was on fire. She went outside and observed that her vehicle, a Ford Explorer, parked in the driveway was fully engulfed in flames and that the fire had spread to her house, the detached garage in front of the vehicle, and her neighbor's wooden fence next to the driveway. The heat from the fire was intense enough to damage the siding of the neighbor's house. She quickly went back inside to rescue her young son and then retreated across the street. The fire department arrived and successfully extinguished the fire.

{¶3} Fire and police departments opened investigations to determine the cause of the fire. As part of the investigation, a police detective interviewed appellant. In the initial interview appellant told the detective that he was not in Middletown on the day of the fire. In a subsequent interview, however, appellant acknowledged that he was in Middletown on the day of the fire but had gone there to meet a woman at a pharmacy downtown. Appellant refused to provide the police with the name or contact information for this mystery woman. The detective attempted to corroborate appellant's story by retrieving surveillance video from businesses near the pharmacy, but the videos failed to show appellant in the area that morning. Meanwhile, the fire department investigator determined that the fire originated in the vehicle and the cause was man-made. A second fire investigator for the wife's insurance company came to the same conclusion as to the fire's origin and cause.

{¶4} Later, in April 2018, appellant visited one of his cousins in Middletown. The cousin noticed that appellant was acting odd that day as he seemed anxious and stressed. At some point, appellant told the cousin that everybody was against him and taking his children away from him. He then admitted that he had "only meant to get the explorer" and

---

1. The wife was living separate from appellant. The wife was granted a divorce from appellant during the course of the criminal case.

did not intend for the fire to spread to the house because he did not want to hurt his son. When the cousin suggested that he talk to the police, appellant threatened to beat her up if she contacted law enforcement. Later that day, the cousin went to take the trash out of her apartment when she noticed appellant standing on her patio. Appellant began yelling at her and advancing toward the apartment. The cousin retreated inside as appellant followed her. Upon entering, appellant picked up a coffee mug and struck the cousin in the head, causing her to fall to the ground. Appellant then began turning over plants and throwing papers on the floor before fleeing the apartment. In her distress, the cousin attempted to call several different friends and relatives to help her, but no one responded. She eventually called the police to come to her aid.

{¶5} Based on these events, a Butler County Grand Jury indicted appellant on six offenses. For the April 2018 event, the grand jury indicted appellant on aggravated burglary and assault. For the September 2017 event, the grand jury indicted appellant on two counts of aggravated arson and two counts of arson. The matter proceeded to a jury trial in which the state called eleven witnesses in its case-in-chief, including, appellant's estranged wife, her next-door-neighbor, appellant's cousin, the lead police detective, a fire department investigator, the insurance company's fire investigator, and a special agent with the Federal Bureau of Investigation who assisted in analyzing cellular telephone records.[2] In his defense, appellant called five witnesses: three witnesses to establish his alibi for the April 2018 event and two expert witnesses, one in the field of fire investigation and the other in cellular telephone record analysis. The state then called one rebuttal witness, the deputy chief of the fire department. At the conclusion of the trial, the jury found appellant guilty as charged.

---

2. The other witnesses included a coworker of appellant, a friend of the cousin who visited her on the day of the burglary, the police officer who responded to the burglary, and an insurance claims representative.

{¶6} The matter proceeded to sentencing. The trial court merged the assault offense into the aggravated burglary offense. Additionally, the trial court merged one of the arson offenses into one of the aggravated arson offenses. The trial court sentenced appellant to six years in prison on the aggravated burglary offense; seven years in prison on each of the aggravated arson offenses; and 12 months in prison on the remaining arson offense. The trial court ordered one of the aggravated arson offenses to be served consecutively to the aggravated burglary offense, resulting in an aggregate sentence of 13 years in prison. The trial court ordered appellant to pay restitution to the victims and informed him of a mandatory five-year term of postrelease control.

{¶7} Appellant now appeals, raising four assignments of error for review.

{¶8} Assignment of Error No. 1:

{¶9} KIRBY'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS PREJUDICIALLY VIOLATED WHEN HIS ATTORNEY FAILED TO SEEK REDRESS FROM THE COURT FOR THE PROSECUTION'S SPOLIATION OF EVIDENCE HIGHLY MATERIAL TO KIRBY'S DEFENSE.

{¶10} In his first assignment of error, appellant argues that he received ineffective assistance of counsel because his trial counsel failed to move to either dismiss or suppress after counsel learned that neither the victim's incinerated vehicle nor relevant engine compartment components had been preserved by the investigating government agencies.

{¶11} To prevail on an ineffective assistance of counsel claim, appellant must establish two factors: (1) that his trial counsel's performance was deficient, that is, the performance fell below an objective standard of reasonable representation, and (2) he suffered prejudice from the deficiency. *State v. McLaughlin*, 12th Dist. Clinton No. CA2019-02-002, 2020-Ohio-969, ¶ 54. To show prejudice, appellant must demonstrate there is a reasonable probability the result of his trial would have been different but for the alleged

errors of his counsel. *State v. Wood*, 12th Dist. Madison No. CA2018-07-022, 2020-Ohio-422, ¶ 27. The failure to prove either deficiency or prejudice is fatal to the ineffective assistance of counsel claim. *State v. Adkins*, 12th Dist. Fayette No. CA2019-03-004, 2020-Ohio-535, ¶ 12.

{¶12} Appellant argues his due process rights were violated by the state's failure to preserve evidence. When considering whether the failure to preserve evidence implicates due process, the threshold question is: what is the nature of the evidence in question? Was the evidence "materially exculpatory" or merely "potentially useful?" *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 73. To be materially exculpatory, the evidence must possess an apparent "exculpatory value" before it was lost, and the defendant must be unable to obtain comparable evidence by other reasonably available means. *Id.* at ¶ 74, citing *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528 (1984). If the evidence is materially exculpatory, it is immaterial whether the government acted in good or bad faith by failing to preserve the evidence, the loss of the evidence amounts to a violation of the defendant's right to the due process of law. *State v. Hamilton*, 12th Dist. Clinton No. CA2014-07-010, 2015-Ohio-1704, ¶ 10. The defendant, generally, bears the burden of showing that the evidence was materially exculpatory. *State v. C.J.,* 12th Dist. Warren No. CA2017-06-082, 2018-Ohio-1258, ¶ 16.

{¶13} On the other hand, "potentially useful" evidence is evidence of such a quality that "'no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.'" *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, ¶ 9, quoting *Arizona v. Youngblood*, 488 U.S. 51, 57, 109 S.Ct. 333 (1988). Where the evidence is only "potentially useful" the defendant must show that the government acted in bad faith for the loss of the evidence to constitute a due process violation. *Id.* Bad faith implies more than bad judgment or negligence; rather, it imports a

dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through an ulterior motive, or ill will partaking of the nature of fraud. *Powell,* 132 Ohio St.3d 233, 2012-Ohio-2577 at ¶ 81. If a defendant cannot demonstrate the government acted in bad faith when it failed to preserve "potentially useful" evidence, then the loss of the evidence does not amount to a violation of his due process rights. *State v. Lazier*, 12th Dist. Warren No. CA2013-03-030, 2013-Ohio-5373, ¶ 11.

{¶14} Here, appellant contends that the vehicle was material exculpatory evidence because it would have allowed him to prove that the cause of the fire was a known defect in the vehicle. In support, appellant argues that the vehicle was subject to a recall from the manufacturer, as demonstrated by a notice from the National Highway Transportation Safety Administration. The subject of the recall was a component in the vehicle's cruise control system. The recall notice specifically warned that a defect in the cruise control system could be a fire hazard regardless of whether the vehicle's engine was on or off.

{¶15} After review of the record, we find that appellant has failed to establish that the vehicle constituted materially exculpatory evidence. While the vehicle was subject to a recall, the vehicle or its components did not possess any *apparent* exculpatory value. The crux of appellant's alternative fire causation theory was whether the vehicle had the defective component—listed in the recall—installed at the time of the fire. Service records for the vehicle could have provided appellant comparable evidence on whether the defective component had been replaced before the fire. Appellant did not present any evidence of the vehicle's service records and his fire investigation expert admitted that he did not investigate whether the defective component had been replaced.

{¶16} Additionally, appellant's fire investigation expert admitted that fire investigation guidelines promulgated by the National Fire Protection Association allow a fire investigator to review investigations by looking at relevant fire scene photographs. Therefore,

appellant's expert was able to adequately review and assess the fire scene. At best, the vehicle or its components would constitute "potentially useful" evidence because additional testing would be needed to determine whether the vehicle contained the defective component and that defect was the cause of the fire.

{¶17} In finding that the lost evidence was only "potentially useful," the next issue is whether the state acted in bad faith when it failed to preserve the evidence. Appellant argues that the state's "cavalier attitude" in failing to secure and preserve the vehicle, in light of the investigator's knowledge of the recall, demonstrated bad faith. In support, appellant relies on *State v. Durnwald*, 163 Ohio App.3d 361, 2005-Ohio-4867 (6th Dist.). We find *Durnwald* to be distinguishable. The *Durnwald* court found that the state acted in bad faith, in part, because the law enforcement officer did not follow the evidence retention policy of his agency. Unlike *Durnwald*, here the investigator did not violate his agency's evidence retention policy. Not only was there no policy mandating storage, the investigator testified that the agency had no capability to store the vehicle. Finally, contrary to *Durnwald*, the investigators did not completely fail to preserve the evidence because they took copious photographs of the vehicle. Again, appellant's fire investigation expert conceded that photographs were a sufficient basis on which to review the fire investigation. Consequently, we find that there was no bad faith in the investigator's failure to preserve the vehicle. Therefore, the state's failure to preserve the vehicle or its components did not constitute a violation of appellant's due process rights.

{¶18} Turning now to appellant's ineffective assistance claim, appellant has failed to establish either deficiency from his trial counsel or prejudice. The failure to preserve the evidence did not violate appellant's due process rights because the evidence was not materially exculpatory and the state's failure to preserve was not animated by bad faith. Therefore, it was not deficient for counsel not to raise a meritless issue. *State v. Kremer*,

12th Dist. Warren Nos. CA2017-07-115 and CA2017-07-116, 2018-Ohio-3339, ¶ 27. Moreover, appellant cannot show that he suffered prejudice. There is no reasonable probability the outcome of the trial would have been different because there was substantial evidence of appellant's guilt. The jury had evidence that appellant confessed to his cousin that he started the vehicle fire and then assaulted her in an attempt to discourage her from telling law enforcement. Moreover, the state presented an analysis of appellant's cellular telephone records that placed appellant in Middletown on the morning of the fire and appellant admitted to police that he was in town that morning. Accordingly, appellant's first assignment of error is overruled.

{¶19} Assignment of Error No. 2:

{¶20} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT FAILED TO INSTRUCT THE JURY NOT TO CONSIDER THE HEARSAY STATEMENTS OF FIRE INVESTIGATOR HUNTER REGARDING GASOLINE IN THE SOIL FOR THEIR TRUTH.

{¶21} In his second assignment of error, appellant argues that the trial court erred when it did not provide a limiting instruction to the jury despite an earlier suggestion that it would provide such an instruction. Appellant contends that the fire department investigator improperly testified to the laboratory testing of soil samples requested by the insurance company's fire investigator because this testimony constituted inadmissible hearsay. Thus, he claims the failure to give a limiting instruction was "clear error" affecting the outcome of the trial because it allowed the state to improperly present the laboratory testing.

{¶22} Appellant did not request the trial court provide a limiting instruction to the jury. By failing to call attention to the error at trial, pursuant to Crim.R. 52(B), this court will only conduct a plain error review. To constitute plain error, there must be an obvious deviation from a legal rule that affected appellant's substantial rights, that is, the error must have

affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 23.

{¶23} Pursuant to Evid.R. 801(C), hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is generally inadmissible as evidence but may be admissible if it falls within one of the exceptions provided in the Ohio Rules of Evidence or is otherwise allowed by law. Evid.R. 802.

{¶24} After review of the record, we find that the trial court did not commit plain error. During the direct examination of the fire department investigator, appellant objected to the investigator's testimony regarding the laboratory tests done by the insurance company's fire investigator. The trial court conducted a sidebar conference on the objection. During this conference, the trial court offered to provide a limiting instruction on hearsay if further questioning necessitated such an instruction. The trial court then sustained appellant's objection on the grounds that the fire department investigator's testimony was nonresponsive to the question and the laboratory analysis had previously been excluded. After the sidebar conference, the trial court struck the fire department investigator's testimony and instructed the jury to disregard it.

{¶25} On continued direct examination, the state made no further inquiries about the insurance investigator's report or laboratory analysis. No hearsay testimony was elicited by the state and the trial court did not need to provide a limiting instruction as proposed during the sidebar conference. Therefore, it was not an error, much less plain error, for the trial court not to provide a limiting instruction. Accordingly, appellant's second assignment of error is overruled.

{¶26} Assignment of Error No. 3:

{¶27} THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION OF AGGRAVATED BURGLARY OR BURGLARY AGAINST KIRBY; THEREFORE, THE TRIAL COURT SHOULD HAVE GRANTED A MOTION OF ACQUITTAL AS TO THAT CHARGE.

{¶28} In his third assignment of error, appellant argues that the trial court erred when it denied his Crim.R. 29 motion for acquittal on the aggravated burglary offense because the state did not prove an essential element of the offense, that is, the element of trespass by force, stealth, or deception.

{¶29} An appellate court reviews the denial of a Crim.R. 29 motion under the same standard as a sufficiency of the evidence challenge. *State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 37. The sufficiency of the evidence challenge requires the reviewing court to determine whether the state has met its burden of production at trial. *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34. The "relevant inquiry" is whether any rational trier of fact, viewing the evidence in a light most favorable to the state, could have found all the essential elements of the crime proven beyond a reasonable doubt. *State v. Erdmann*, 12th Dist. Clermont Nos. CA2018-06-043 and CA2018-06-044, 2019-Ohio-261, ¶ 21, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. On a sufficiency of the evidence challenge, the reviewing court will not consider the credibility of the witnesses. *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 161-162.

{¶30} Appellant was convicted of aggravated burglary in violation of R.C. 2911.11(A)(1). This statute provides that

> (A) No person, by force, stealth, or deception, shall trespass in
> an occupied structure[,] * * * when another person other than an
> accomplice of the offender is present, with purpose to commit in

> the structure * * * any criminal offense, if any of the following apply:
>
> The offender inflicts, or attempts or threatens to inflict physical harm on another.

R.C. 2911.11(A)(1).  A trespass occurs when an offender knowingly enters or remains on the premises of another without the privilege to do so.[3]  *State v. Shepherd*, 12th Dist. Butler No. CA2015-11-187, 2017-Ohio-328, ¶ 18, citing R.C. 2911.21(A)(1).  The methods of trespass in the aggravated burglary statute—force, stealth, or deception—are written in the disjunctive, therefore the state only needed to prove one of the three methods.[4]  *Id.* at ¶ 17, citing *State v. Bell*, 12th Dist. Butler No. CA93-07-143, 1994 Ohio App. LEXIS 309, *6 (Jan. 31, 1994).  "Force" is defined by statute as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."  R.C. 2901.01(A)(1).  Similar to the aggravated burglary statute, the definition of force is also stated in the disjunctive.  Therefore, it only requires a showing of one of the three methods—violence, compulsion, or constraint—that is physically exerted.

{¶31} The cousin testified that she noticed appellant standing on the patio outside her apartment when she went to take out the trash that evening.  When she saw appellant, she did not invite him into the residence.  Viewing the evidence in the light most favorable to the prosecution it was reasonable for the jury to infer that appellant did not have the privilege to enter the apartment.  The cousin also testified that appellant was yelling and "carrying on," and then "pushed" her into her apartment from the doorway.  Therefore, this testimony provided sufficient basis for any rational trier of fact to find that appellant used force to gain unprivileged entry into the cousin's apartment.

---

3.  "Privilege" means an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity.  R.C. 2901.01(A)(12).

4.  We note that the trial court only instructed the jury to consider whether appellant committed a trespass by force.

{¶32} Furthermore, the victim testified that appellant attacked her by striking her in the head with a coffee cup after entering her home. Even, assuming arguendo, the initial entrance was not forcible, the subsequent attack was sufficient to prove the forcible trespass. As the Ohio Supreme Court has explained, "even assuming lawful initial entry, the jury was justified in inferring from the evidence that [the defendant's] privilege to remain in [the victim's] home terminated the moment he commenced his assault on [the victim]" and the defendant's actions constituted a trespass. *State v. Steffen*, 31 Ohio St.3d 111, 115 (1987). "Where a defendant commits an offense against a person in the person's private dwelling, the defendant forfeits any privilege, becomes a trespasser and can be culpable for burglary." *State v. Wisecup*, 12th Dist. Clermont No. CA2004-02-014, 2004-Ohio-5652, ¶ 10; *accord State v. Trigg*, 2d Dist. Montgomery No. 26757, 2016-Ohio-2752, ¶ 9; *State v. Schall*, 4th Dist. Vinton No. 14CA695, 2015-Ohio-2962, ¶ 37. Any privilege appellant may have had to enter or remain in the apartment terminated upon his assault of the cousin and the assault provided sufficient evidence for the element of forcible trespass.

{¶33} Consequently, the state met its burden of production on the element of forcible trespass. There was sufficient evidence to find appellant guilty of aggravated burglary. The third assignment of error is overruled.

{¶34} Assignment of Error No. 4:

{¶35} THE APPELLANT'S CONVICTION FOR BURGLARY AND AGGRAVATED BURGLARY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶36} In his fourth assignment of error, appellant argues that his conviction for aggravated burglary was against the manifest weight of the evidence because appellant provided alibi evidence by the testimony of several witnesses that he was not at the victim's apartment when the burglary and assault occurred.

{¶37} A manifest weight of the evidence challenge requires an appellate court to

examine the greater amount of credible evidence, offered at trial, to support one side of the issue over the other. *State v. Peyton*, 12th Dist. Butler No. CA2015-06-112, 2017-Ohio-243, ¶ 42. To do this, an appellate court will review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice the conviction must be reversed and a new trial ordered. *State v. Spencer*, 12th Dist. Warren No. CA2018-08-082, 2019-Ohio-2165, ¶ 21. A reviewing court will overturn a conviction based on a manifest weight challenge only in the extraordinary circumstance, to correct a manifest miscarriage of justice, where the evidence weighs heavily in favor of acquittal. *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 34.

{¶38} While a manifest weight of the evidence review involves the consideration of witness credibility, an appellate court must be mindful that credibility determinations are primarily for the jury to decide. *State v. Johnson*, 12th Dist. Warren Nos. CA2019-07-076 and CA2019-08-080, 2020-Ohio-3501, ¶ 17. This is because the jury, as the original trier of fact, was in the best position to judge the credibility of the witnesses and assign weight to the evidence. *Spencer* at ¶ 21. Furthermore, the reviewing court will not reverse a conviction on a manifest weight challenge merely because there was inconsistent evidence at trial. *State v. Freeze*, 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840, ¶ 90.

{¶39} After review of the record, we find that the jury did not clearly lose its way in finding appellant guilty of aggravated burglary. Appellant's cousin testified that appellant entered her apartment, took a coffee mug, and struck her in the head. Appellant then knocked over objects in the room. The state called two witnesses to corroborate this story. The responding police officer and a friend of the cousin testified that when they arrived at the cousin's apartment, they saw the injury to her head, a broken coffee mug, and the

objects strewn around the room. Furthermore, the cousin's timeframe for the offense remained consistent. She testified that appellant arrived shortly after 5:00 p.m. Appellant attempted to impeach the cousin's credibility, however, the prosecutor presented evidence that the cousin's testimony at trial was consistent with her earlier statement to the police about the time of the attack.

{¶40} On the other hand, appellant's alibi witnesses did not provide a consistent timeframe for appellant's whereabouts on the day in question. In fact, the testimony of appellant's witnesses contradicted each other. One witness testified that appellant was with him from around 11:30 a.m. to around 5:30 p.m. In contrast, a second witness testified that she was with appellant from around 4:00 to 4:15 p.m. to around 5:30 p.m. when appellant left to run errands with the witness's husband. Moreover, on cross-examination, the prosecutor discredited the second witness's trial testimony by presenting her prior inconsistent statement that suggested her timeframe of appellant's visit was off by nearly two hours. Appellant's final alibi witness testified that he was with appellant starting around 6:30 p.m., a time well after the offense was committed. A conviction is not against the manifest weight of the evidence because the jury chose to believe the testimony of witnesses for the state. *State v. Burrell*, 12th Dist. Fayette No. CA2016-04-005, 2016-Ohio-8454, ¶ 22.

{¶41} Accordingly, appellant's conviction for aggravated burglary was not against the manifest weight of the evidence. Appellant's fourth assignment of error is overruled.

{¶42} Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.