[Cite as *State v. White*, 2021-Ohio-4292.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

ROBERT J. WHITE,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 CO 0025**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2020 CR 2

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed in part. Reversed and Vacated in part.

---

*Atty. Vito Abruzzino*, Columbiana County Prosecutor, *Atty. Tammie M. Jones*, and *Atty. Steven Yacavone*, Assistant Prosecuting Attorneys, Columbiana County Prosecutor's Office, 105 South Market Street, Lisbon, Ohio 44432, for Plaintiff-Appellee and

*Atty. Edward Czopur,* DeGenova & Yarwood, Ltd., and *Atty. Rhys B. Cartwright-Jones*, 42 North Phelps Street, Youngstown, Ohio 44503, for Defendant-Appellant.

Dated:  November 24, 2021

_____

**D'APOLITO, J.**

**{¶1}**    Appellant Robert White appeals his convictions for one count of aggravated burglary in violation of R.C. 2911.11(A)(2), a felony of the first degree, and one count of aggravated menacing in violation of R.C. 2903.21(A), a misdemeanor of the first degree (relating to Tommy Shields), following a trial by jury in the Columbiana Court of Common Pleas.  Appellant was also convicted of resisting arrest in violation of R.C. 2921.33(C)(2), a felony of the fourth degree, and four additional counts of aggravated menacing, however, he does not challenge the foregoing convictions in this appeal.  However, Appellant does appeal the trial court's imposition of consecutive sentences on his aggravated burglary and resisting arrest convictions.

**{¶2}**    Appellant advances five assignments of error.  He argues that there is insufficient evidence in the record to support the two challenged convictions and that they are against the manifest weight of the evidence.  Because his aggregate sentence is less than the maximum sentence for aggravated burglary, Appellant further argues that the imposition of consecutive sentences was contrary to law, as there was a single sentence that could adequately punish him.

**{¶3}**    For the following reasons, Appellant's aggravated burglary conviction is affirmed.  Appellant's aggravated menacing conviction and sentence relating to Shields are reversed and vacated, and the state is prohibited from retrial on the charge. Finally, Appellant's consecutive sentences on the aggravated burglary and resisting arrest charges are affirmed.

## **FACTS**

**{¶4}**    The following facts are taken from the trial testimony of three of the victims, Joshua Jackson, Shawn Woods and Dave McGuire, unless otherwise noted.  A fourth victim, Tommy Shields, did not testify.

**{¶5}**    Jackson and Woods assembled several days a week at the trailer of McGuire and Shields at the conclusion of the work day.  Although Jackson does not

imbibe, the others typically consumed a few alcoholic beverages as they all unwound from the day's work.

{¶6} On the evening of December 23, 2019, at approximately 6:00 p.m., the four friends were present when Appellant entered the trailer in a very angry mood, with a large black pistol in his hand and his finger on the trigger hold. Appellant lived in a trailer within walking distance from the trailer of McGuire and Woods. A fifth man, identified only as "Strawberry," had left the trailer shortly before Appellant arrived.

{¶7} Appellant had previously been a welcome visitor to the trailer a couple of times a week in the past. However, McGuire testified that Appellant's mood, which McGuire described as distraught and upset, "wasn't like nothing [he] ever seen [sic] before." (*Id.*, p. 165.) According to McGuire, even when Appellant was under the influence of alcohol, "he never acted like that before." (*Id.*, p. 166.) Woods, who considered himself to be a good friend of Appellant, concurred that Appellant "was never like that." (*Id.*, p. 194.)

{¶8} Simultaneous with Appellant's entry into the trailer, Sonia Reed, who McGuire believed to be Appellant's girlfriend, called McGuire on the telephone to announce that Appellant was on his way. Woods testified that Appellant began ranting "about we was [sic] taking sides with his old lady – his girlfriend." (*Id.*, p. 192.)

{¶9} According to Jackson, "It wasn't long before [Appellant] was waving [the pistol] around getting a little more heated." (*Id.*, p. 132.) Appellant was yelling at the men with anger in his voice. He instructed them to "stay out of [his] business." Jackson testified that Appellant offered no context for the directive, but, instead, described Appellant as "just spitting out words." (*Id.*, p. 133.) McGuire testified that Appellant seemed impaired, and that "[s]omething wasn't right." (*Id.*, p. 166.) Later in his testimony, McGuire described Appellant as being "off his rocker." (*Id.*, p. 184.)

{¶10} All of the men were seated at a kitchen island when Appellant entered the trailer, however, at some point, Woods stood up. Appellant walked over to Woods, put the pistol to Woods' head and told him to "sit the fuck back down" or Appellant would "shoot [Woods] right there." Appellant further instructed the other three men to remain seated. (*Id.*, p. 135.)

**{¶11}** Woods testified that Appellant's behavior was so out of character that Woods initially thought Appellant might be "joking around." (*Id.*, p. 194.) However, Woods recognized the seriousness of the situation when Appellant trained the pistol on Woods' temple and threatened to shoot him in the head. Woods testified that he did not believe Appellant would shoot him, "but there's always a chance." (*Id.*)

**{¶12}** McGuire was similarly concerned about Appellant's behavior because McGuire did not know if the pistol was loaded or the safety was engaged. According to Jackson, the pistol "never stopped moving" as Appellant continued to "rambl[e]." (*Id.*, p. 136.)

**{¶13}** McGuire attempted to reason with Appellant, encouraging him to calm himself and talk with the other men in order to "figure things out." (*Id.*) According to McGuire, Appellant "just wasn't calming down." (*Id.*, p. 168.)

**{¶14}** Finally, according to Jackson, McGuire and Shields told Appellant "you need to just leave." (*Id.*, p. 137.) McGuire testified that "everyone told him to go," as no one wanted Appellant in the trailer "because he was threatening everyone." (*Id.*, p. 168-169.)

**{¶15}** According to Jackson, Appellant did not immediately comply, but shortly thereafter, he departed from the trailer, all the while continuing to wave the pistol. McGuire testified that Appellant remained in the trailer for an estimated ten to fifteen minutes after he was told to leave. However, McGuire conceded that it was difficult for him to estimate the amount of time that elapsed because "a minute seemed like ten minutes." (*Id.*, p. 169.) McGuire testified that Appellant "just all of a sudden turned around, stormed out, kicked the screen door, and went out the door." (*Id.*)

**{¶16}** Jackson locked the door behind Appellant, whose automobile was still in the driveway with the motor running, despite the fact that Appellant appeared to have left the scene. Jackson testified that he locked the door because he got a "wrong feeling that if [Appellant] was coming back in the door things would have been [sic] a different outcome." (*Id.*, p. 138.) McGuire concurred that Jackson locked the door "in case [Appellant] came back." (*Id.*, p. 169.)

**{¶17}** Jackson considered Appellant to be a threat to others as well as himself. According to McGuire, Jackson called the police because Woods was upset. However, Woods testified that he himself called the police.

**{¶18}** Appellant, who was the only witness for the defense, testified that he needed money for Christmas presents and decided to sell his only possession of value – a .45 caliber pistol.  Appellant did not have contact information for Woods, who he knew to be an avid gun collector, so Appellant went to McGuire's trailer, where he had seen Woods many times.

**{¶19}** According to Appellant, when he arrived, McGuire invited Appellant to join him and Strawberry to "do a line" of what Appellant believed was cocaine. (*Id.*, p. 424-425.)  According to Appellant, when he entered the trailer, the other men "already had a plate out, so they must have been doing the stuff before [he] got there." (*Id.*, p. 427.)

**{¶20}** Appellant testified that he started feeling "weird" and it "scared [him]."  (*Id.*, p. 428.) Strawberry offered him some of the substance in exchange for the pistol. Then, Strawberry instructed Appellant to take the substance because Strawberry intended to keep the pistol.  An argument ensued and Appellant fled from the trailer on foot, leaving his vehicle running in front of the trailer.  Appellant walked home and "passed out for a little bit." (*Id.*, p. 429.)  He felt paranoid, that is, "that someone was coming after [him]." He attributed his paranoia to his chemically-altered state. (*Id.*)

**{¶21}** Appellant was apprehended in his trailer after a roughly one-and-a-half hour standoff with nine law enforcement officers that ended without physical injury to any of the participants. Appellant did not comply with law enforcement commands during his surrender and a taser was deployed to subdue him.  He testified that he spent the time in his trailer furiously unloading all of his guns, because he was terrified by his mood.

**{¶22}** Appellant was indicted for one count of aggravated burglary in violation of R.C. 2911.11(A)(2), a felony of the first degree; one count of resisting arrest in violation of R.C. 2921.33(C)(2), a felony of the fourth degree; one count of using weapons while intoxicated in violation of 2923.15(A), a misdemeanor of the first degree; one count of domestic violence in violation of 2919.25(A), a misdemeanor of the first degree; and five counts of aggravated menacing in violation of 2903.21(A), misdemeanors of the first degree, with the first four counts relating to the four men in the trailer and the fifth count

relating to a patrolman from the St. Claire Township Police Department, who Appellant confronted during the standoff in his trailer.

**{¶23}** The state entered a nolle prosequi to the domestic violence charge, due to Reed's refusal to testify at trial. Appellant was ultimately convicted of aggravated burglary, resisting arrest, and all five counts of aggravated menacing. He was acquitted of the charge of using weapons while intoxicated.

**{¶24}** Appellant was sentenced to a minimum of four and a maximum of six years for the aggravated burglary conviction, eighteen months on the conviction for resisting arrest (maximum sentence), and one-hundred-and-eighty days of local incarceration (maximum sentences) on each of the five convictions for aggravated menacing. The sentencing entry reads, in pertinent part:

> The Defendant's indefinite prison term for Count 1, **Aggravated Burglary**, shall be served **consecutively** to the definite prison term for Count 2, **Resisting Arrest.** Pursuant to R.C. 2929.14, this Court finds that consecutive prison sentences are necessary to punish the offender, to protect the public from future crimes, and that consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct and the danger he/she poses to the public. This Court further finds that the offenses were committed during a single course of conduct and harm was so great or unusual that no single prison term adequately reflects the seriousness of the offender's conduct.

(10/2/20 J.E., p. 2.) As a consequence, the trial court imposed an aggregate minimum sentence of five-and-a-half years to an aggregate maximum sentence of seven-and-a-half years.

**{¶25}** This timely appeal followed.

## ASSIGNMENT OF ERROR NO. 1

**THE CONVICTION FOR AGGRAVATED BURGLARY WAS BASED UPON INSUFFICIENT EVIDENCE AS THE STATE FAILED TO PROVE A "TRESPASS" AS REQUIRED BY STATUTE.**

Case No. 20 CO 0025

## ASSIGNMENT OF ERROR NO. 2

**THE CONVICTION FOR AGGRAVATED BURGLARY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THE STATE FAILED TO PROVE A "TRESPASS" AS REQUIRED BY STATUTE.**

**{¶26}** Whether the evidence is legally sufficient to sustain a conviction is a question of law dealing with adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing the sufficiency of the evidence, the court views the evidence in the light most favorable to the prosecution to ascertain whether any rational juror could have found the elements of the offense proven beyond a reasonable doubt. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). The rational inferences to be drawn from the evidence are also evaluated in the light most favorable to the state. See *State v. Filiaggi*, 86 Ohio St.3d 230, 247, 714 N.E.2d 867 (1999). For a sufficiency review, the question is merely whether "any" rational juror could have found the contested element satisfied beyond a reasonable doubt. *State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶27}** An evaluation of witness credibility is not involved in a sufficiency review as the question is whether the evidence is sufficient if it is believed. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79, 82; *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). In other words, sufficiency involves the state's burden of production rather than its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring). If the court finds insufficient evidence supported the conviction, then a retrial is barred. *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶ 16-20. Even evidence erroneously admitted by the trial court can be considered in the sufficiency evaluation because the remedy for the erroneous admission of prejudicial evidence is a new trial. *See Id.*

**{¶28}** Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Thompkins*, 78 Ohio St.3d at 387. Although the effect of the evidence in inducing belief is evaluated, weight of the evidence is not a question of mathematics. *Id.* A weight of the

evidence review considers whether the state met its burden of persuasion (as opposed to the burden of production involved in a sufficiency review). *See id.* at 390 (Cook, J., concurring).

**{¶29}** When a defendant claims the conviction is contrary to the manifest weight of the evidence, the appellate court is to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, citing *Thompkins*, 78 Ohio St.3d at 387. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact occupies the best position from which to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

**{¶30}** Appellant was convicted of aggravated burglary in violation of R.C. 2911.11(A)(1), which provides, in relevant part:

> No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * * [t]he offender, inflicts, or attempts or threatens to inflict physical harm on another * * *.

R.C. 2911.11(A)(1).

**{¶31}** Appellant contends that none of the men believed Appellant's threats were genuine. However, Jackson, McGuire, and Woods each testified to the tense nature of the confrontation. Woods and McGuire described Appellant's mood as unrecognizable,

as they each testified that they had never seen Appellant in such a state. Although Woods conceded that he initially thought Appellant was joking, he was immediately disabused of that belief when Appellant pointed the pistol at Woods' head and threatened to shoot him. Further, none of the men attempted to stand after Appellant commanded them to remain seated.

**{¶32}** Adding to the frenzied confusion, the men were unable to ascertain the root of Appellant's anger. Jackson testified that he could not organize Appellant's ramblings, although Woods gleaned generally that it was "something about [the men] was [sic] taking sides with his old lady – his girlfriend." (*Id.*, p. 192.) Efforts to calm Appellant were of no avail.

**{¶33}** When Appellant departed from the trailer, Jackson immediately locked the door behind Appellant, even though Appellant appeared to have left the scene. Finally, the men believed that the situation was worthy of intervention by law enforcement officers. As a consequence, we do not agree that the men did not believe Appellant's threats.

**{¶34}** "Trespass" is defined as knowingly and without privilege entering *or remaining* on the premises of another. (Emphasis added) R.C. 2911.21(A)(1). Because Appellant was a regular guest at the trailer, and he asserts that the testimony of the victims establishes that he departed immediately after being instructed to leave, Appellant contends that the state failed to establish the trespass element of the crime of aggravated burglary.

**{¶35}** However, Ohio appellate courts have consistently interpreted the Supreme Court of Ohio's decision in *State v. Steffen*, 31 Ohio St.3d 111, 115, 509 N.E.2d 383 (1987), to hold that a violent crime committed in the residence of one other than the defendant always constitutes aggravated burglary, that is, the commission of the crime terminates the privilege to remain in the home. See *State v. Mitchell*, 8th Dist. Cuyahoga No. 94287, 2010-Ohio-5775, ¶ 15; accord *State v. Trigg*, 2d Dist. Montgomery No. 26757, 2016-Ohio-2752, ¶ 9; *State v. Schall*, 4th Dist. Vinton No. 14CA695, 2015-Ohio-2962, ¶ 37; *State v. Kirby*, 12th Dist. Butler No. CA2019-05-078, 2020-Ohio-4005, ¶ 32, appeal not allowed, 160 Ohio St.3d 1495, 2020-Ohio-5634, 159 N.E.3d 275, ¶ 32; *State v. Campbell*, 6th Dist. Lucas No. L-17-1289, 2019-Ohio-5004, ¶ 51.

{¶36} Based on the testimony at trial, we find that there was sufficient evidence in the record to establish that Jackson, Woods, and McGuire believed Appellant's threats to be genuine, and that the trespass began shortly after Appellant entered the trailer, when he began his verbal rant and began waving the pistol at the men. We further conclude that the jury did not lose its way in crediting the testimony of the three men in the trailer that evening. Accordingly, we find that Appellant's first and second assignments of error have no merit.

## ASSIGNMENT OF ERROR NO. 3

**THE CONVICTION FOR AGGRAVATED MENACING, RELATIVE TO MR. SHEILDS, WAS BASED UPON INSUFFICIENT EVIDENCE AS THERE WAS NO TESTIMONY THAT HE WAS EVER IN FEAR OF ANY HARM.**

## ASSIGNMENT OF ERROR NO. 4

**THE CONVICTION FOR AGGRAVATED MENACING, RELATIVE TO MR. SHEILDS, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THERE WAS NO TESTIMONY THAT HE WAS EVER IN FEAR OF ANY HARM.**

{¶37} The aggravated menacing statute reads, "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person[.]" R.C. 2903.21(A). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶38} For the offense of aggravated menacing, "[i]t is sufficient to prove that the victim, in the moment, believed the defendant to be in earnest and capable of acting." *State v. Marcum*, 7th Dist. Columbiana No. 10 CO 17, 2011–Ohio–6140, ¶ 37, citing *State v. Collie*, 108 Ohio App.3d 580, 582–583, 671 N.E.2d 338 (2d Dist.1996). Although the state is not required to show that the offender intended to carry out the threat to prove aggravated menacing, the state is required to show that the victim had a subjective belief of serious physical harm, which can be proven with circumstantial evidence. *State v.*

*Clemmons*, 12th Dist. Butler No. CA2020-01-004, 2020-Ohio-5394, ¶ 33, citing *State v. Landrum*, 1st Dist. Hamilton No. C-150718, 2016-Ohio-5666, ¶ 9.

**{¶39}** "Serious physical harm to persons" includes the following:

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5)(b)-(e).

**{¶40}** Shields did not testify at the trial because he moved out of state. (Trial Tr., p. 174.) As a consequence, Appellant argues that there was insufficient evidence that Shields believed Appellant would cause serious physical harm to Shields' person. However, Ohio appellate courts that have considered the question have opined that evidence of a victim's belief of serious physical harm may be established by circumstantial evidence. *City of Cleveland v. Reynolds*, 8th Dist. Cuyahoga No. 105546, 2018-Ohio-97, ¶ 6; *State v. Landrum*, 1st Dist. Hamilton No. C–150718, 2016–Ohio–5666, ¶ 9.

**{¶41}** For instance, in *State v. Crews*, 10th Dist. Franklin No. 00AP-1391, 2001 WL 710143, the victim did not specifically testify that he believed Crews would cause him serious physical harm. Nonetheless, the Tenth District opined:

In the present case, there was evidence presented by the state indicating that Dr. Bowman arrived at his office and discovered that someone had fired multiple shots into his office, leaving bullet holes in a rear door, along the hallway to the kitchen, and through a kitchen window. Other damage had also been done to the office. Dr. Bowman subsequently listened to a

Case No. 20 CO 0025

telephone message in which the caller threatened to "blow [his] * * * head off." (Tr. at 43.) Dr. Bowman testified that he was very fearful as a result of the threatening message. Defendant, who identified herself on the phone message, admitted at trial that she left the message and that she had fired a weapon at Dr. Bowman's office. Defendant also acknowledged that her intent was to scare Dr. Bowman.

*Id.* at *4.

{¶42} More pointedly, in *State v. Shumaker* (Feb. 18, 1994), Darke App. No. 1332, unreported, the victim fled from the scene and could not be identified to testify at the trial. The state relied instead on the testimony of a bystander, a gas station attendant, to establish that Shumaker berated a young woman, threatening to "knock her on her ass," in order to convince her to move her automobile to another pump. *Id.* at *2. The attendant testified that the young woman was shaking, upset, and crying after the encounter. The Second District affirmed Shumaker's conviction, opining:

> While it is true that the victim herself did not testify as to her own state of mind, which fact is heavily relied upon by counsel for the appellant, there was certainly sufficient evidence that she was frightened and terribly upset. She was observed to be crying and trembling and she deliberately fled the scene as soon as possible, even refusing to remain long enough to give a statement to the sheriff's deputy who had already been called and was on his way. Viewing the evidence in the light most favorable to the state, as we are required to do, we can easily conclude that a reasonable mind could determine that the victim was in fear of serious physical harm if she remained at the location where the appellant was still present and acting in a loud and threatening manner, not just to her but also to the bystander who had tried to calm him down.

*Id.* at *5.

**{¶43}** While we agree that circumstantial evidence of fear has the same weight as direct evidence, we find that the facts in the foregoing cases are distinguishable from the facts in this appeal. First, Dr. Bowman testified in *Crews, supra,* that he feared the defendant. Further, unlike the victim in *Shumaker*, supra, there was no testimony provided by any witness in this appeal that Shields was visibly shaken or that he demonstrated any belief that Appellant was going to cause him serious physical harm.

**{¶44}** The state cites Woods' testimony that Woods asked the other victims, "what the hell just happened?" after Appellant departed from the trailer. Woods further testified, "that's basically how we all were." (Trial Tr., p. 196.) However, this excerpt from the trial testimony demonstrates incredulousness, not belief that serious physical harm would occur.

**{¶45}** The state further relies on the body camera footage of the victims to demonstrate Shields' belief that serious physical harm would occur. Although there is extensive body camera footage of the standoff, there is roughly a minute of footage of the victims, who, with the exception of Woods, are not specifically identified. Woods is the only victim that exits the trailer and engages in a conversation with law enforcement officers. The others appear in the trailer in the distance, and, although the law enforcement officers announce their intent to return to the trailer after they apprehend Appellant, there is no body camera footage of any subsequent interview.

**{¶46}** The essential element of aggravated menacing at issue in this appeal is a subjective belief that Appellant will cause serious physical harm to the victim. Because there is no evidence, direct or circumstantial, to establish Shields' subjective belief, we find that there is insufficient evidence to establish the aggravated menacing conviction related to Shields, and that Appellant's third assignment of error has merit. Accordingly, we reverse and vacate Appellant's conviction on the aggravated menacing conviction relating to Shields, and the state is prohibited from retrying the charge against Appellant. Further, our conclusion that Appellant's third assignment of error is meritorious renders his fourth assignment of error to be moot.

## ASSIGNMENT OF ERROR NO. 5

**THE CONSECUTIVE SENTENCES IMPOSED AGAINST APPELLANT WERE CONTRARY TO LAW AS, BY DEFINITION, THERE WAS A SINGLE SENTENCE THAT COULD ADEQUATELY PUNISH APPELLANT.**

{¶47} This court reviews felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22. Pursuant to R.C. 2953.08(G)(2), this Court may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶48} R.C. 2929.14 governs consecutive sentences and states the following:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

**{¶49}** "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. "[A] word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29.

**{¶50}** Because the maximum sentence for aggravated burglary is eleven years, and the trial court imposed consecutive sentences for an aggregate maximum term of seven-and-a-half years, Appellant argues that his sentence is contrary to law because the aggregate maximum sentence is less than the maximum sentence for aggravated burglary. The trial court plainly stated that the maximum sentence was appropriate for the resisting arrest conviction because "the resisting arrest with the standoff * * * is certainly the worst form of the offense." (10/1/20 Sent. Hrg, p. 14.) Therefore, inherent in the trial court's decision to impose a less-than-statutory-maximum sentence for aggravated burglary is the recognition that Appellant's crime at the trailer of McGuire and Shields does not constitute the worst form of the offense.

**{¶51}** Appellant's interpretation of the statutory language "no single prison term for any of the offenses committed as part of any of the courses of conduct adequately

reflects the seriousness of the offender's conduct" runs counter to the trial court's obligation to fashion the sentences for each conviction without regard to the sentences imposed on the other convictions. It likewise runs afoul of the trial court's statutory duty during sentencing to "consider [the applicable factors in R.C. 2929.12] regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense." R.C. 2929.12(B). Accordingly, we find that the consecutive sentences are not contrary to law, and Appellant's fifth assignment of error has no merit.

## CONCLUSION

{¶52} In summary, Appellant's conviction for aggravated burglary is affirmed, as the threat and trespass elements of the crime were established through testimony that Appellant began threatening the four men and waving the pistol at them immediately following his entry into the trailer. Appellant's aggravated menacing conviction relating to Shields is reversed and vacated, and the state prohibited from retrial of the charge, as there is no evidence in the record that Shields believed Appellant would cause serious physical harm to Shields' person. Finally, Appellant's consecutive sentences are affirmed.

Donofrio, P.J., concurs.

Robb, J., concurs.

---

For the reasons stated in the Opinion rendered herein, Appellant's conviction for aggravated burglary and his consecutive sentences on burglary and resisting arrest charges from the Court of Common Pleas of Columbiana County, Ohio are affirmed. Appellant's aggravated menacing conviction relating to Shields is reversed and vacated. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**